UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDEN YOHANES, | CASE NO. C20-101 MJP |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; |
| v. | |
| JAMES RIVER INSURANCE COMPANY, | DENYING DEFENDANT'S MOTION FOR A PROTECTIVE ORDER |
| Defendant. | |

THIS MATTER comes before the Court on Plaintiffs' Motion for Leave to Amend the Complaint and Join Parties (Dkt. No. 20) and Defendant's Motion for a Protective Order (Dkt. No. 22).  Having reviewed the Motions, the Responses (Dkt. Nos. 25, 27), the Replies (Dkt. Nos. 29, 31) and the related record, the Court GRANTS Plaintiff's Motion to Amend the Complaint (Dkt. No. 20) and DENIES Defendant's Motion for a Protective Order (Dkt. No. 22).

//

//

**Background**

In 2016, while riding in a car operated by a driver for the ride-sharing service Uber, Plaintiff was involved in a motor vehicle collision, sustaining multiple facial fractures that required surgery.  The driver of the other car was an underinsured motorist ("UIM"), insured by USAA Insurance ("USAA").  As an Uber passenger, Plaintiff was entitled to recover automobile insurance policy benefits, including underinsured motorist benefits from Defendant, James River, for damages she sustained in the collision.   (Dkt. No. 1, Ex. 1 ("Compl.") ¶ 3.)  Plaintiff accepted USAA's tender of its insurance limits of $100,000 but the Parties dispute whether Defendant granted permission for Plaintiff to accept this offer.  (Id. ¶ 2.11; Dkt. No. 10 ("Answer"), ¶ 2.11.)

On May 28, 2018, Plaintiff sent a settlement demand to Defendant, James River, under its UIM policy.  (Id., ¶¶ 2.13.)   On June 15, 2018 Defendant responded to Plaintiff's settlement demand by requesting 30 days to respond.  (Id. ¶¶ 2.14-15.)  Yet Plaintiff alleges that for more than a year, Defendant failed to respond to Plaintiff's demand or propose its own offer.  (Compl. ¶¶ 2.10-11.)  Further, during that year, Defendant repeatedly requested that Plaintiff provide additional information and requested additional time to respond on multiple occasions.  (Id. ¶¶ 2.14-2.29; Answer ¶¶ 2.14-15, 2.21.)  On August 16, 2019, more than a year after her settlement demand, Plaintiff contacted Defendant about the status of an offer, but Plaintiff was once again asked for information regarding her settlement with USAA.  (Id. ¶¶ 2.33: Answer ¶¶ 2.33.)

On December 12, 2019 Plaintiff filed claims against Defendant in the Superior Court of Washington for King County, for breach of contract, violation of the Insurance Fair Conduct Act ("IFCA"), violation of the Consumer Protection Act ("CPA"), and common law bad faith and the

1   violation of the duty of good faith.  (<u>Id.</u>)  The matter was removed to this Court on January 22,

2   2020.  (Dkt. No. 1.)

3                                                          **Discussion**

4   **I.**      **Plaintiff's Motion for Leave to Amend**

5         Plaintiff seeks leave to amend and to join additional parties based on the June 5, 2020,

6   Plaintiff took the deposition of Defendant's claims handler, Wes Houston.  (Dkt. No. 20 at 3.)

7   During the deposition, Mr. Houston testified that in June or July of 2018 James River sought

8   approval from Uber for authority to resolve Plaintiff's UIM claim for up to $205,000 and Uber

9   rejected the insurer's authority request, reducing the carrier's settlement authority to just

10   $105,000.  (Dkt. No. 21, Ex. B at 112:7-113:8.)  Based on this testimony, Plaintiff now seeks

11   leave to amend her complaint to add Uber USA LLC and/or Uber Technologies, Inc. and Uber's

12   parent company, Rasier, LLC (collectively, "Uber").

13         A party seeking leave to amend a complaint after the date specified in the scheduling

14   order must establish both "good cause" to modify the scheduling order under Federal Rule of

15   Civil Procedure 16 and that amendment is proper under Federal Rule of Civil Procedure 15.

16   Under Rule 16, the focus of the inquiry is on the moving party's diligence and reasons for

17   seeking modification.  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992)

18   (citations omitted).  A party establishes "good cause" by showing that, even acting diligently, it

19   could not have met the deadlines set forth in the scheduling order.  <u>Id.</u>  Once this threshold is

20   met, leave to amend under Rule 15 is to be granted freely "when justice so requires."  Fed. R.

21   Civ. P. 15(a)(2).  While there is a "strong policy in favor of allowing amendment," <u>Royal Ins.</u>

22   <u>Co. of Am. v. Southwest Marine</u>, 194 F.3d 1009, 1016 (9th Cir. 1999) (citation omitted), leave

23

24

1   need not be granted where the amendment is sought in bad faith, would prejudice the opposing

2   party, would result in undue delay, or is futile.  Id.

3          Plaintiff contends that Uber directed or controlled some of the work performed by

4   Defendant, thereby exposing Uber to claims of vicarious liability for Defendant's actions.  (Dkt.

5   No. 20 at 5.)  Plaintiff also intends to assert a claim for tortious interference with a contract,

6   arguing that Uber directed Defendant to breach its contract with Plaintiff, when it directed

7   Defendant to offer Plaintiff only 50% of what James River had intended to offer.  (Id. at 5.)

8   Defendant's opposition is solely focused on futility, arguing that because Uber is not an insurer,

9   Plaintiff cannot assert claims against it under IFCA and the CPA, or for violation of the duty of

10  good faith.  (Dkt. No. 25 at 3.)  Without wading into the merit of Plaintiff's additional claims, the

11  Court does not find that they would be futile.  Grant v. Unigard Indem. Co., No. CV14-00198

12  BJR, 2015 WL 11233201, at *3 (W.D. Wash. Mar. 13, 2015) (rejecting argument that "bad faith

13  claims do not extend to non-insurers"); Lease Crutcher Lewis WA, LLC v. Nat'l Union Fire Ins.

14  Co., 2009 WL 3444762, at *2 (W.D. Wash. Oct. 20, 2009) (quoting RCW 48.01.020) (noting

15  that the insurance code of Washington governs "'all insurance transactions . . . and all persons

16  having to do therewith . . . .'").  And because the recent testimony of Defendant's claims adjustor

17  presented new facts that are relevant to this action, Plaintiff has demonstrated good cause to

18  amend the complaint.  Plaintiff's Motion is GRANTED.

19  **II.      Defendant's Motion for a Protective Order**

20          Defendant seeks a protective order limiting the depositions of two fact witnesses and

21  barring the production of confidential and protected information sought in Plaintiff's Second Set

22  of Interrogatories and Requests for Production.  (Dkt. No. 22.)

23  **A.  Depositions**

24

1    Defendant first seeks a protective order limiting the depositions of two fact witnesses—

2    Defendant's employees Bonnie Leigh and Coley Favors—to three hours each and prohibiting

3    Plaintiff's counsel "from conducting the fact witness depositions as FRCP 30(b)(6) depositions."

4    (Dkt. No. 22 at 7.)  Alternatively, Defendant seeks a ruling from the Court that Defendant is not

5    bound to responses by fact witnesses regarding Defendant's official policies or procedures

6    beyond the scope of their personal knowledge.  (Id.)

7    Defendant explains that a protective order is necessary because "Plaintiff's counsel

8    treated the deposition of fact witness Wesley Houston as an FRCP 30(b)(6) deposition," asking

9    questions about Mr. Houston's understanding of Defendant's policy manual and the procedures

10   he was trained to follow.  (Dkt. No. 22 at 3-4, 7-9; Dkt. No. 23, Declaration of Sarah

11   Tuthill-Kveton ("Tuthill-Kveton Decl."), Ex. B.)  The Court finds Defendant's motion wholly

12   unsupported; Defendant has given no good reason to curtail the depositions of these witnesses.

13   While the deponents are not Rule 30(b)(6) witnesses, Plaintiff is entitled to question them

14   regarding their understanding of Defendant's policies and procedures and their training.  As

15   Plaintiff notes, in IFCA litigation, a claim handler's understanding of Defendant's training

16   materials is "plainly relevant" to determining "whether the individual employee departed from

17   Defendant's own internal guidance . . . while also allowing Plaintiffs to determine whether systemic

18   defects exist in Defendant's handling of these types of claims in general."  Hover v. State Farm Mut.

19   Auto. Ins. Co., No. CV-13-05113-SMJ, 2014 WL 4239655, at *4 (E.D. Wash. Aug. 26, 2014); (Dkt.

20   No. 27 at 11.)

21   Defendant also requests that the deposition of Ms. Favors be continued until after she

22   returns from her current leave of absence from James River.  (Dkt. No. 22 at 4-5.)  Plaintiff did

23   not learn of Ms. Favors' leave until after the discovery conference and has agreed to reschedule,

24   making this last request moot.  (Dkt. No. 27 at 2.)  The Parties are advised that in this district

they are required to engage in a good faith conference in person or by telephone "to attempt to resolve the matter in dispute without the court's involvement." LCR 1. Here, it appears that a simple discussion could have resolved the issue of scheduling Ms. Favors' deposition, without resort to motion practice.

Finally, the Court cautions that Defendant's objections during Mr. Houston's deposition were not well-taken. Defendant's counsel objected 99 times during the deposition, making objections that appear interposed to disrupt the deposition or cue the witness. She also instructed Mr. Houston not to answer a question based on an objection to form and asked to take a personal break immediately after Plaintiff's counsel posed a question. (Ramsey Decl., Ex. 2 at 11:20-12:6, 14:15-25.) These interruptions are inappropriate and not in keeping with the expectations described in the Court's Local Rules, which explain that "[t]here should be no difference between the professional conduct of counsel when appearing before the court and when engaged outside it whether in discovery or any other phase of a case." Intro. to LCR.

**B. Discovery Requests**

Defendant also requests a protective order barring the production of "confidential and protected information sought in Plaintiff's Second Set of Interrogatories and Requests for Production." (Dkt. No. 22 at 9.) Specifically, Defendant resists producing information and materials responsive to Plaintiff's Interrogatory No. 1, which seeks the names and contact information for each person who was consulted or who assisted in the evaluation of Plaintiff's claim and Request for Production No. 1(b), which requests communications between Rasier or its subsidiaries and Defendant about Plaintiff's claim file. (Tuthill-Kveton Decl., Ex. F at 4.)

Defendant claims these communications are (1) not relevant because they may have occurred before Plaintiff confirmed her acceptance of the USAA offer on January 8, 2019 and

1    (2) confidential under the terms of Defendant's contractual agreements with Rasier and its

2    subsidiary companies.  (Dkt. No. 22 at 10-11.)  Defendant's arguments are specious, at best.

3          First, communications about Plaintiff's claim file are relevant to Plaintiff's allegations

4    that Defendant used a series of bad faith delays to avoid making an offer on her claim for more

5    than a year.  (Compl. ¶¶ 2.10-11, 2.14-2.29.)  Further, although Defendant asserts that nothing in

6    Plaintiff's claim file before January 8, 2019 is relevant because Plaintiff did not confirm her

7    acceptance of the USAA offer until that date, Defendant's timeline remains a contested fact issue

8    in this matter.  (Dkt. No. 22 at 10.)  Plaintiff alleges that Defendant was aware she accepted the

9    USAA offer sometime before May 28, 2018 because she did so with Defendant's permission.

10   (Compl. ¶ 2.11.)  And Defendant's employee Wes Houston recently testified that Defendant

11   began evaluating Plaintiff's claim in June or July of 2018, at least five months before

12   Defendant's proclaimed start of the relevancy period.  (Ramsey Decl., Ex. 2 at 19:2-5.)  To the

13   extent such documents and communications reveal Defendant's determinations of Plaintiffs' loss

14   and Defendant's decisions about how much to pay, these documents are relevant to the litigation.

15   Heather v. Allstate Prop. & Cas. Ins. Co., No. C18-1179-JCC, 2019 WL 5425250, at *2 (W.D.

16   Wash. Oct. 23, 2019), order clarified, No. C18-1179-JCC, 2020 WL 30340 (W.D. Wash. Jan. 2,

17   2020), reconsideration denied, No. C18-1179-JCC, 2020 WL 777212 (W.D. Wash. Feb. 18,

18   2020)).

19          Second, Defendant has failed to explain what commercial or confidential information

20   would be revealed if Defendant produces correspondence specifically relating to Plaintiff's

21   claim.  (Dkt. No. 27 at 15.)  One seeking a protective order must establish that the information

22   sought is confidential.  American Standard v. Pfizer, 828 F.2d 734, 739-40 (Fed. Cir.

23   1987)(citation omitted).  "The required showing imposes a burden on the party to demonstrate

24

that 'specific prejudice or harm will result if no protective order is granted.'" <u>Trade Assocs. Inc.</u>
<u>v. Fusion Techs. Inc.</u>, No. 09-5804RJB, 2010 WL 11530556, at *1 (W.D. Wash. Sept. 29, 2010)
(quoting <u>Phillips</u>, 307 F.3d at 1211).  "Broad allegations of harm, unsubstantiated by specific
examples or articulated reasons, do not satisfy the Rule 26(c) test."  <u>Id.</u> (quoting <u>Phillips</u>, 307
F.3d at 1210-11).

Here, Defendant rests entirely on the affidavit of Anita Rogers, Vice President of Claims
for James River Insurance Company, who declares: "The requested information is confidential
and proprietary pursuant to the contractual agreements between James River Insurance Company
and Rasier LLC and its related entities."  (Dkt. No. 24 at 2.)  This statement is wholly
insufficient, as it describes no "particularized harm" and does nothing to answer the question of
why disclosure of communications about Plaintiff's claim would be covered by a contract
between these entities.  <u>See, e.g.</u>, <u>Muse Apartments, LLC v. Travelers Cas.</u>, No. C12-2021RSL,
2014 WL 11997863, at *3 (W.D. Wash. Dec. 2, 2014) (denying protective order where insurer
"made no attempt to identify the types of responsive documents it has or to explain why those
documents should not be revealed or should only be revealed under certain
protections . . . . simply asserting that a document is confidential is not enough to warrant a
protective order.")

Further, Defendant has not met its obligations under Federal Rule of Civil Procedure
26(b)(5), which requires a party withholding information that is otherwise discoverable under a
claim of privilege to: (i) expressly make the claim; and (ii) describe the nature of the documents,
communications, or tangible things not produced or disclosed—and do so in a manner that,
without revealing information itself privileged or protected, will enable other parties to assess the
claim.  Defendant did not list the contested communications on its privilege log and has not

described them with any specificity to the Court.  (See Ramsey Decl., Ex. 3 (Defendant's privilege log).)  The Court will not issue a protective order on this record; Defendant's motion is DENIED.

### Conclusion

Finding that Plaintiff has established good cause for amending her complaint and joining additional parties, the Court GRANTS Plaintiff's Motion (Dkt. No. 20).  And because Defendant has not met its burden of establishing that a protective order is necessary in this matter, the Court DENIES Defendant's Motion (Dkt. No. 22).

The clerk is ordered to provide copies of this order to all counsel.

Dated July 28, 2020.

Marsha J. Pechman
United States Senior District Judge